UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAGITEC SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHICAGO TEACHERS' PENSION FUND, <br><br> Defendant. | Court File No. 1:23-cv-01365 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Sagitec Solutions, LLC ("Sagitec" or "Plaintiff"), by its attorneys, brings this Complaint and demand for jury trial against Defendant Chicago Teachers' Pension Fund ("CTPF" or "Defendant") to recover damages caused by CTPF's breach of the parties' contract, CTPF's wrongful termination of Sagitec under the parties' contract, and CTPF's failure to pay in excess of $1,000,000 owed by CTPF to Sagitec under the parties' contract.

Sagitec also seeks declaratory judicial relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that CTPF did not have the right to suspend or terminate the parties' contract and that CTPF wrongfully terminated the parties' contract.

## INTRODUCTION

1. On April 6, 2022, Sagitec and CTPF entered into three separate agreements: (a) a Master Software Development Agreement, including a Summary Statement of Work ("MSA"), (b) a Hosting Services Agreement ("HSA"), and (c) a Solution Support Services Agreement ("SSA") (collectively the "Contract"). True and correct copies of the MSA, HSA and SSA are attached as Exhibits 1, 2, and 3, respectively.

2. Under the Contract, Sagitec agreed, among other things, to develop software for use in CTPF's pension administration system.

3. Sagitec dutifully performed its obligations under the Contract.

4. On September 6, 2022, Sagitec sent written correspondence to CTPF, informing CTPF of events relating to two of Sagitec's Class B members who worked with customers on a different product line and were not part of Sagitec's team developing software for CTPF's pension administrative system, and Sagitec offered to schedule a meeting with CTPF and answer any questions CTPF may have.

5. CTPF responded on September 26, 2022, and stated that it would be "reaching out" to Sagitec in the near future to schedule a meeting. Sagitec responded to CTPF that same day and told CTPF that Sagitec looked forward to the conversation.

6. On September 30, 2022, however, CTPF sent an e-mail to Sagitec's leadership purporting to suspend Sagitec's performance under the Contract, even though the Contract did not authorize any party to suspend Contract performance, even though there was no legitimate basis for suspension, and even though Sagitec did not hear further from CTPF about the meeting CTPF stated just four days earlier would be scheduled.

7. Sagitec disputed CTPF's purported suspension of its performance under the Contract, and Sagitec requested CTPF to identify the Contract provision(s) allowing suspension.

8. CTPF declined to respond to Sagitec, and CTPF failed to identify the Contract provision(s) purportedly allowing suspension.

9. Thereafter, in an October 26, 2022, letter, CTPF made unfounded allegations that Sagitec breached its obligations under the parties' Contract based on alleged non-disclosure of information in connection with the applicable June 25, 2021, Request for Proposal ("RFP") and

November 23, 2021, Best and Final Offer ("BAFO") in connection with the Contract, even though Sagitec had already explained why CTPF's allegations are incorrect.

10. CTPF also purported in its October 26, 2022, letter to give notice of default to Sagitec and demanded that Sagitec cure the purported default within thirty days.

11. Unbeknownst to Sagitec, on October 25, 2022—*the day before CTPF issued its first notice of default letter to Sagitec*—CTPF held a public Board of Trustees meeting and approved terminating Sagitec. Thus, CTPF had already decided to terminate Sagitec before CTPF ever declared a default.

12. CTPF's October 26, 2022, notice of default was nothing more than a ruse used to conceal CTPF's true actions and intentions.

13. CTPF's October 26, 2022, letter was the first time that CTPF alleged that Sagitec did anything wrong, and CTPF's October 26, 2022, letter was issued *after* the CTPF Board of Trustees had already voted to terminate Sagitec.

14. Although CTPF's October 26, 2022, letter provided thirty-days' notice to cure to Sagitec, the cure period was provided *after* CTPF's decision to terminate was made. CTPF's declaration of breach, the thirty-day cure period, and subsequent written correspondence to continue discussions between CTPF and Sagitec were completely illusory because CTPF already made the decision to terminate Sagitec.

15. CTPF's actions in purporting to terminate the Contract were wrongful and breached the Contract.

16. CTPF refuses to pay Sagitec in excess of $1,000,000 that CTPF owes to Sagitec under the Contract.

17. Sagitec seeks recovery of all damages caused by CTPF's breach of the Contract and also seeks a judicial declaration that CTPF wrongfully terminated Sagitec and had no right to terminate Sagitec under the terms of the Contract.

## PARTIES

18. Sagitec is a Nevada limited liability company with offices located at 422 County Road D East, Saint Paul, MN 55117. Sagitec has eight members. Five members are Class A members with active roles in management and own membership units of Sagitec. Three members are Class B members. One of the Class B members has a management role, but the other two Class B members have no management role.

19. The citizenship of each of Sagitec's members for purposes of diversity jurisdiction is as follows: (1) Derek Deshler and Piyush Jain are natural persons who are citizens of the United States and are domiciled in Florida; (2) Ranjith Kotcherlakota is a natural person who is a citizen of the United States and is domiciled in New Jersey; (3) Deepak Ahuja is a natural person who is a citizen of the United States and is domiciled in India; (4) Balasubramanian Venkatsubramanian is a natural person who is a citizen of the United States and is domiciled in California; (5) David Minkkinen and Sivaraman Sambasivam are natural persons who are citizens of the United States and are domiciled in Minnesota; and (6) CJ Ravi Sankar is a natural person who is a citizen of India who possesses a green card and is domiciled in Texas.

20. David Minkkinen and Sivaraman Sambasivam are Class B members and have no active management or other active role in Sagitec's business operations.

21. CTPF is a public Illinois pension fund created pursuant to the Illinois Pension Code, with offices located at 425 S Financial Pl., Ste. 1400, Chicago, IL 60605-1000. CTPF is a citizen of Illinois for purposes of diversity jurisdiction.

**JURISDICTION AND VENUE**

22. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Sagitec and CTPF, as explained above.

23. This Court has personal jurisdiction over CTPF because CTPF is a citizen of the state of Illinois and because CTPF has established sufficient minimum contacts with the state of Illinois by generally conducting business in that state.

24. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because CTPF is located in the state of Illinois within this District and because a substantial part of the events or omissions giving rise to the claims herein arose within this District.

25. The parties agreed in the MSA that "[a]ny legal suit, action, or proceeding arising out of or related to this Agreement or the licenses granted hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of Illinois, in each case located in the city of . . . Chicago County of Cook, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding." (MSA § 14.15.)

**FACTUAL BACKGROUND**

26. Sagitec offers, among other things, best in class software solution development services, as well as project management services, training and development services, software implementation and transition services, enterprise content management solutions and technology support services.

27. Sagitec's Neospin™ pension administration software ("Neospin™") is a fully integrated, browser-based software system with comprehensive functionality for administering pension benefits. Since 2004, Neospin™ has helped public and private pension funds enhance

5

service capabilities, lower operating costs, stave off technical obsolescence, and respond to complex, frequently changing business requirements. Supported by Sagitec's underlying .NET software framework, Neospin™ is a dynamic IT solution with flexibility to grow, adapt, and evolve.

28. Under the terms of the Contract, Sagitec implemented its base Neospin™ software system for use in CTPF's pension administration system and was configuring, enhancing, and customizing the implementation for CTPF's requirements and use as part of Sagitec's work under the Contract.

29. Sagitec's Neosurance™ solution ("Neosurance™") is a fully integrated, browser-based application providing comprehensive functionality for unemployment insurance (UI) tax, benefits, and appeals administration. Neosurance™ out of the box is designed to be easily tailored to meet each agency's unique needs without complex software programming.

30. The software being implemented by Sagitec for CTPF did *not* include Neosurance™, which is a completely different software solution that is not used in any way in Sagitec's Neospin™ software system or in CTPF's business.

31. The provenance of CTPF's unfounded allegations against Sagitec relates to the indictment of two former Sagitec executives and Class B members: David Minkkinen and Sivaraman Sambasivam, wherein the United States federal government has asserted that certain intellectual property was misappropriated by these two individuals from another company and used to create the Neosurance™ solution. Sagitec cooperated fully with the federal government's investigation of Messrs. Minkkinen and Sambasivam, and those individuals have no active role in Sagitec's business operations.

32. Moreover, as Sagitec has explained repeatedly to CTPF, Sagitec's work under the Contract is not related to the federal government's investigation or the indictment against Messrs. Minkkinen and Sambasivam. Sagitec's work for CTPF relates to an entirely different product—Neospin™ —which is used in pension administration and is separate from and has nothing to do with Neosurance™, which is used for unemployment insurance (UI) tax, benefits, and appeals administration.

33. Based on the indictment of Messrs. Minkkinen and Sambasivam and Sagitec's earlier, proactive disclosure of that event to CTPF, an e-mail dated September 30, 2022 from CTPF to Sagitec stated that Sagitec's performance under the Contract was being "suspended" by CTPF until the parties could meet to address CTPF's concerns. The Contract, however, does not contain any term permitting one party to suspend the other party's performance under these circumstances.

34. On October 11, 2022, a lengthy Teams meeting was conducted between Sagitec and CTPF representatives, as well as outside legal counsel for the parties.

35. On October 11, 2022, and at all other times, Sagitec explained to CTPF that: (a) Sagitec was *not* charged in the indictment against Messrs. Minkkinen and Sambasivam, (b) Sagitec had cooperated fully with the federal government's investigation, and (c) Sagitec was not restricted in any way from conducting business or performing or executing contractual commitments. Again, neither Sagitec's Neospin™ pension product, nor the services provided by Sagitec to CTPF under the Contract, is at issue or involved in the government's investigation of Messrs. Minkkinen and Sambasivam.

36. Following the October 11, 2022, meeting, Sagitec's outside counsel responded to all further inquiries from CTPF's outside counsel and produced copies of Sagitec's 2021-2022 and 2022-2023 Certificates of Liability Insurance, which CTPF requested.

37. Sagitec also reiterated its request that CTPF identify the provision(s) of the Contract that CTPF believed gave CTPF the right to suspend performance. CTPF could not identify, and to date has never identified, any such suspension contract provision, because none exists.

38. Sagitec's outside counsel attempted further communications with CTPF's outside counsel, but CTPF's counsel failed to respond.

39. Then, without warning, on October 26, 2022, CTPF sent a letter to Sagitec alleging that Sagitec breached the Contract, and CTPF alleged that it would be "impossible" for Sagitec to cure the breach, and purported to provide notice to terminate the Contract for cause.

40. CTPF alleged in its October 26, 2022, letter that Sagitec withheld material information about the federal government's investigation of Messrs. Minkkinen and Sambasivam in connection with the RFP and the BAFO. CTPF's allegations are false.

41. Sagitec responded to CTPF's October 26, 2022, letter in a letter dated November 2, 2022.

42. Sagitec explained that CTPF's allegations lacked merit and that Sagitec was not in breach of the Contract, although CTPF breached the Contract suspending the parties' performance for over a month.

43. As explained to CTPF in its November 2, 2022, letter, Sagitec timely and fully disclosed the United States federal government's investigation to CTPF before CTPF and Sagitec signed the Contract.

44. Section 3.2.4.1 of CTPF's June 25, 2021, RFP relating to the Contract stated as follows:

> Has your Company, related entities, affiliates, principals, and/or officers been a party in any material civil or criminal litigation, or subject to investigation,

disciplinary action, or regulatory review, whether or not directly related to services requested by this RFP? If so, provide details, including dates and outcomes.

45. In its response to Section 3.2.4.1 of the CTPF RFP, Sagitec responded as follows:

Sagitec was notified by the United States Attorney's Office for the Northern District of West Virginia that Sagitec, along with some of its officers, was the target of an investigation by the U.S. Department of Labor, Office of Inspector General.

46. Sagitec's response was completely accurate and provided the very information requested by CTPF in the RFP.

47. Contrary to CTPF's assertion, Sagitec's response expressly disclosed that both Sagitec and some of its officers were targets of the investigation. CTPF's allegation that Sagitec failed to disclose the federal government's investigation is patently false. It is also true that Sagitec was not in litigation at the time, and Sagitec is not currently in litigation, and Sagitec has never been in litigation, over the federal government's investigation.

48. Sagitec addressed its response to Section 3.4.4.m of the RFP and stated as follows: "[d]escribe any anticipated litigation in which your Company may be involved."

49. Sagitec responded as follows: "Sagitec does not anticipate any litigation involving Sagitec."

50. CTPF's allegation in its October 26, 2022, letter that Sagitec was untruthful when Sagitec stated that it "does not anticipate any litigation involving Sagitec" was patently false. There has been no litigation with the federal government or third parties involving Sagitec since Sagitec responded to the RFP, and Sagitec truthfully stated that Sagitec did not anticipate any litigation at the time Sagitec responded to the RFP.

51. Sagitec further explained in its November 2, 2022, response, that CTPF's October 26, 2022, letter failed to reference an e-mail exchange between Lupe Garcia (CTPF's counsel) and Sagitec's representatives Jeff Adair and Jeff Bryce, that occurred from June 22, 2021,

9

through June 24, 2021, before the Contract was signed in which Sagitec fully-disclosed the information that CTPF now claims was missing and omitted.

52. Sagitec re-provided to CTPF and its legal counsel copies of the June 2021 e-mails exchanged between CTPF's legal counsel and Sagitec on those dates, as part of Sagitec's response to the RFP, and as part of CTPF's evaluation of Sagitec's RFP response and disclosures about the federal government's investigation.

53. Ms. Garcia's June 22, 2021, e-mail requested additional information resulting from Sagitec's submission of its minimum qualifications to the PAS RFP, including the following: "If Sagitec[] is permitted by law, please provide a summary of the investigation by the U.S. Department of Labor, Inspector General."

54. Mr. Adair responded on behalf of Sagitec to CTPF's inquiry from Ms. Garcia on June 24, 2021, as follows:

> Sagitec was notified by the United States Attorney's Office for the Northern District of West Virginia that Sagitec, along with some of its officers, was the target of an investigation by the U.S. Department of Labor, Office of Inspector General. Sagitec is fully cooperating with the investigation.
>
> Given this investigation is not yet closed, we have been advised to keep it confidential and not share any details internally or externally, other than with the key Sagitec management team and strictly on a need-to-know basis. Hence, we are unable to share any further details currently.
>
> We do not believe this investigation will affect Sagitec's ability to implement and support Neospin, perform its obligations under this RFP or any resulting contract.

55. CTPF's legal counsel, Ms. Garcia, responded to Mr. Adair on June 24, 2021, and stated: "Thank you for your ***complete and prompt response***." (Emphasis added.)

56. Consequently, contrary to CTPF's baseless 2022 allegations, Sagitec satisfied all disclosure obligations almost one-and-one-half years *before* CTPF alleged that Sagitec failed to

satisfy its disclosure obligations. CTPF's counsel, Ms. Garcia, *even acknowledged the completeness of Sagitec's response*.

57. Therefore, in addition to the fact that Sagitec's disclosure in the RFP was completely accurate and provided crystal clear notice of the government's investigation to CTPF, Sagitec answered Ms. Garcia's direct inquiry on the subject of this investigation and was assured that Sagitec's response was "complete and prompt."

58. CTPF's allegation that Sagitec breached its Contract with CTPF, much less the allegation that Sagitec has committed an uncurable breach, is utterly without merit. Sagitec is fully ready, willing and able to perform under the parties' Contract.

59. In its November 2, 2022, letter, Sagitec reiterated its request that CTPF cite a specific provision in the Contract that permits suspension by CTPF. Once again, CTPF was unable to do so.

60. Sagitec reminded CTPF of prior correspondence sent to CTPF's outside counsel, along with follow-up e-mails, asking for clarification of CTPF's position regarding suspension. Sagitec also reminded CTPF that it did not receive a response to its inquiries and instead received CTPF's October 26, 2022, letter.

61. Sagitec requested that CTPF inform Sagitec whether CTPF would (1) lift the "suspension," (2) retract its allegations of breach and continue performance, or (3) terminate the Contract for convenience

62. CTPF responded by letter dated November 9, 2022. CTPF stated as follows:

I refer you to the October 26, 2022 Notice of Breach for the answers to your questions. CTPF's Notice of Breach also serves as the response to the inquiries made by Sagitec to CTPF's outside counsel. As to any potential termination of the Agreement, CTPF will follow the processes that are prescribed in the Agreement if termination is warranted.

63. By letter dated November 25, 2022, Sagitec responded to CTPF's November 9, 2022, letter. In its response, Sagitec highlighted additional, troubling facts that had recently been discovered regarding CTPF's conduct.

64. In particular, on or about November 24, 2022, Sagitec learned that on October 25, 2022—the day before CTPF issued its first notice of default letter to Sagitec—CTPF held a public meeting and approved terminating Sagitec. Thus, CTPF had already decided to terminate Sagitec before CTPF ever declared a default so CTPF's October 26, 2022, notice of default was a ruse used to conceal CTPF's true actions and intentions.

65. On October 25, 2022, the CTPF Board of Trustees met and:

- Approved terminating CTPF's Contract with Sagitec, as pension administration system ("PAS") vendor.

- The CTPF Board of Trustees held a meeting via Zoom and there was a disruption to the Zoom connection.

- According to the CTPF's public records: "But because there is uncertainty regarding whether the public had full access to the [October 25, 2022] meeting at the time the vote regarding the PAS vendor was taken, it is recommended that, in the abundance of caution, the Board ratify its vote to approve the PAS vendor contract termination."

66. According to the CTPF's website, the CTPF Board of Trustees recommended to ratify its vote taken at the October 25, 2022, meeting to approve Sagitec's termination.

67. CTPF's October 26, 2022, letter was the first time that CTPF alleged that Sagitec did anything wrong, and CTPF's October 26, 2022, letter was issued *after* the CTPF Board of Trustees had already voted to terminate Sagitec. CTPF's October 26, 2022, letter also provided thirty-days' notice to cure to Sagitec, but the cure period was provided *after* CTPF's decision to terminate was made. Thus, the declaration of breach, the thirty-day cure period, and subsequent written correspondence to continue discussions between the parties were completely illusory because CTPF already made the decision to terminate Sagitec.

68. Sagitec reiterated that Sagitec had requested multiple times for CTPF to identify the Contractual provision upon which CTPF relied for the suspension and that CTPF had not identified any Contract provision.

69. The reasons why CTPF was silent and failed to identify a relevant contract provision became clear in light of the CTPF Board of Trustees' October 25, 2022, vote and included the following:

- There is no contract provision in the parties' Contract allowing suspension.

- CTPF's true intention as revealed in its October 25, 2022, Board of Trustees meeting before the October 26, 2022, notice of default and cure letter was issued by CTPF to Sagitec, was for CTPF to terminate Sagitec.

70. Sagitec also explained to CTPF that CTPF's November 9, 2022, letter did not provide a substantive response to Sagitec's prior letters and e-mails, and CTPF did not respond substantively to Sagitec's November 2, 2022, letter.

71. Moreover, Sagitec informed CTPF that, although CTPF's November 9, 2022, letter stated a desire to continue discussions, this statement was contradicted by CTPF's October 25, 2022, decision to terminate Sagitec.

72. CTPF's allegations that Sagitec breached the Contract were nothing more than pretext advanced by CTPF in an effort to avoid paying Sagitec the remaining amounts then owed under the Contract, which exceed $1,000,000. The amounts owed by CTPF to Sagitec include payment for, without limitation, completed deliverables, hosting services, and partially completed deliverables. In addition, Sagitec carried the costs of the Sagitec team assigned to the project while the project was suspended (even though there was no contractual justification for a suspension) through December 14, 2022. CTPF is liable for these extra labor costs.

73. Moreover, despite CTPF's demand that Sagitec cure the breaches alleged in CTPF's October 26, 2022, letter, CTPF has failed to provide any communication to Sagitec that would help Sagitec address CTPF's concerns, even after multiple attempts by Sagitec to do so, and CTPF refused to meet with or talk to Sagitec.

74. CTPF never had any intention to communicate in a constructive way to address and resolve any concerns CTPF may have with Sagitec's performance, even though CTPF's concerns were always unjustified.

75. Sagitec is entitled to expectancy and lost profits damages for the improper termination of the parties' Contract.

## **COUNT I: BREACH OF CONTRACT**

76. Sagitec restates and realleges the preceding paragraphs as though fully stated herein.

77. As described herein, Sagitec and CTPF entered into the Contract.

78. The Contract is a valid and binding agreement.

79. Sagitec performed all of its obligations under the Contract.

80. CTPF breached the Contract by wrongfully terminating the Contract and by failing to pay amounts CTPF owes to Sagitec in accordance with the terms of the Contract.

81. CTPF's breach of the Contract has directly and proximately caused damages to Sagitec in excess of $1,000,000.

82. Sagitec is entitled to recover all damages caused by CTPF's breach of the Contract in excess of $75,000, exclusive of interest and costs, along with all costs, attorneys' fees and prejudgment interest that may be allowed under the terms of the Contract and by law.

## COUNT II: ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT

83. Sagitec restates and realleges the preceding paragraphs as though fully stated herein.

84. As an alternative claim by Sagitec against CTPF, Sagitec entered into the Contract with the reasonable expectation of payment from CTPF.

85. CTPF has received, retained, and enjoyed the benefit and use of Sagitec's services and work product during the relevant time period.

86. CTPF has deprived Sagitec of more than $1,000,000 in earned revenue.

87. CTPF has been unjustly enriched by retaining, utilizing, and benefitting from Sagitec's services during the relevant time period while failing to make payment for the same.

88. It would be unjust for CTPF to benefit from its wrongful conduct.

89. CTPF would be unjustly enriched if it is allowed to refuse to pay money due and owing to Sagitec.

90. As a direct and proximate cause of CTPF's wrongful actions, Sagitec has incurred and is entitled to recover damages against CTPF in an amount in excess of $75,000, exclusive of interest and costs, along with all costs, attorneys' fees and prejudgment interest that may be allowed by law.

## COUNT III: DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 and 2202

91. Sagitec restates and realleges the preceding paragraphs as though fully stated herein.

92. 28 U.S.C. § 2201(a) provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any

such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

93. 28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

94. There exists an actual, justiciable controversy between Sagitec and CTPF regarding whether CTPF had a right to terminate the Contract and whether CTPF's termination of the Contract was wrongful.

95. Pursuant to 28 U.S.C. § 2201(a), Sagitec requests a declaratory judgment in its favor and against CTPF, declaring that (1) CTPF did not have the right to suspend the Contract, (2) CTPF did not have the right to terminate the Contract; and (3) CTPF's termination of the Contract was wrongful.

## DEMAND FOR JURY TRIAL

96. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Sagitec hereby demands a trial by jury on all matters so triable.

## REQUEST FOR RELIEF

WHEREFORE, Sagitec respectfully requests judgment against CTPF:

A. On Counts I and II of the Complaint, awarding damages in excess of $75,000, exclusive of costs and interest, along with all costs, attorneys' fees and prejudgment interest that may be allowed under the terms of the Contract and/or by law;

B. On Count III, declaring that (1) CTPF did not have the right to suspend the Contract, (2) CTPF did not have the right to terminate the Contract; and (3) CTPF's termination of the Contract was wrongful; and

C. Awarding Sagitec such other and further relief as is appropriate, just and equitable.

Respectfully submitted,

SAGITEC SOLUTIONS, LLC

By: */s/ Monte L. Mann*
        One of Its Attorneys

Monte L. Mann (Illinois Bar #6229771)
*mmann@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza, Suite 1500
Chicago, IL  60606
Telephone:  (312) 419-6900
Fax:  (312) 419-6928

Aaron A. Dean (MN Bar #243954)
Bryant D. Tchida (MN Bar #0314298)
*Aaron.Dean@lawmoss.com*
*Bryant.Tchida@lawmoss.com*
MOSS & BARNETT
150 South Fifth Street, Suite 1200
Minneapolis, MN  55402
Telephone:  (612) 877-5000
Fax:  (612) 877-5999
(*Pro Hac Vice Motions Forthcoming*)

#1476502